IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| STONY MARINE INTERNATIONAL )<br>LIMITED d/b/a Coleman Supply )<br>Company and Laurence O. Stoney, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ARTHUR J. GALLAGHER & CO., )<br>ARTHUR J. GALLAGHER RISK )<br>MANAGEMENT SERVICES INC. d/b/a )<br>Gallagher Riley, and RILEY & )<br>ASSOCIATES INC. and/or its Officers, )<br>Directors and Shareholders, )<br>)<br>Defendants. )<br>_____ ) | No. 2:16-cv-1154-DCN<br><br>**ORDER** |

This matter is before the court on a motion to remand filed by plaintiffs Laurence O. Stoney and Stoney Marine International Limited ("plaintiffs"). For the reasons set forth below, the court grants plaintiffs' motion.

**I. BACKGROUND**

Plaintiffs operate a ship chandlery business, supplying the needs of vessels in the Port of Charleston, South Carolina. Compl. ¶ 1. From 2007 to 2009 plaintiffs purchased liability insurance through defendant Riley & Associates, Inc. ("Riley"). Id. ¶ 17. In 2009 or early 2010, plaintiffs selected a competing agency, Anderson Insurance Associates ("Anderson") to place its insurance. Id. ¶¶ 18, 19. Riley eventually approached plaintiffs about regaining their business, and plaintiffs informed Riley that if it could provide the same coverage as the policy obtained through Anderson (the "Anderson Policy") at a better price, then plaintiffs would again purchase their insurance

1

through Riley.  Id. ¶¶ 20, 21.  Notably, the Anderson Policy included coverage for claims made pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA coverage").[1]  Id. ¶ 19.  Plaintiffs provided Riley with a copy of the Anderson Policy for this purpose.  Id. ¶ 21.  Based on Riley's representation that it could provide the same coverage at a lower premium, plaintiffs resumed purchasing their insurance from Riley and obtained a policy for the period of August 1, 2011 to August 1, 2012 (the "2011 Policy").  Id. ¶ 23; see also Notice of Removal Ex. B, 2011 Policy.

In early 2012, defendants Arthur J. Gallagher & Co. and Arthur J. Gallagher Risk Management Services Inc. (the "Gallagher defendants") purchased Riley's assets and liabilities.  Id. ¶ 4.  Plaintiffs then purchased a renewal of the 2011 Policy through the Gallagher defendants for the period of August 1, 2012 to August 1, 2013 (the "2012 Policy").  Notice of Removal Ex. C, 2012 Policy.

On or about December 24, 2012, plaintiffs were making a water delivery to a customer vessel when one of plaintiffs' crew members suffered a fall which caused him significant injury (the "accident").  Compl. ¶¶ 9, 10.  Plaintiffs immediately notified defendants of the accident and their potential claim.  Id. ¶ 11.  In March of 2013, the insurance carrier of the 2012 Policy denied plaintiffs' claim because there was no coverage in place to protect plaintiffs from potential liability imposed under Workers' Compensation, the Longshore and Harbor Workers' Compensation Act, or the Jones Act.  Id. ¶ 12.  On February 26, 2016, plaintiffs filed the instant action in Court of Common Pleas for Charleston County, bringing claims for negligence and gross negligence, fraud, fraud in the inducement, violation of the South Carolina Unfair Trade Practices Act, and

---

[1] At least, plaintiffs allege that the Anderson Policy included such coverage.  No party has provided the court with a copy of the Anderson Policy.

2

negligent misrepresentation in connection with the defendants' failure to obtain the proper coverage on plaintiffs' behalf.

On April 13, 2016, the Gallagher defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, on the grounds that Riley, the only non-diverse party, should be disregarded for jurisdictional purposes because Riley was fraudulently joined. On May 13, 2016, plaintiffs filed the instant motion to remand, and on May 31, 2016, the Gallagher defendants filed a response. This matter has been fully briefed and is ripe for the court's review.

## II.  STANDARD

A defendant has a statutory right to remove a civil action brought in state court over which "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a); Davis v. N.C. Dep't of Corr., 48 F.3d 134, 138 (4th Cir. 1995). If it appears that removal was improper, a party can move to remand the case to state court "within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). When removal is challenged, the defendant has the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chem. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Because federal courts are courts of limited jurisdiction, removal raises federalism concerns and must be strictly construed in favor of state court jurisdiction. Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.

## III.  DISCUSSION

The Gallagher defendants contend that this court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction requires "complete diversity," meaning that "each defendant [must be] a citizen of a different State from

3

each plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). Plaintiffs and Riley are undisputedly citizens of South Carolina. To avoid this apparent lack of diversity, the Gallagher defendants look to the doctrine of fraudulent joinder.[2]

The doctrine of fraudulent joinder allows a federal court to "disregard, for jurisdiction purposes, the citizenship of certain [in-state] defendants, assume jurisdiction over a case, dismiss [those] defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). The party asserting fraudulent joinder has the "heavy burden" to "demonstrate either outright fraud in the plaintiff's pleading or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, . . . even after resolving all issues of law and fact in the plaintiff's favor." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks and citation omitted) (emphasis in original). "This standard is even more favorable to the plaintiff than the motion to dismiss standard under Rule 12(b)(6)." Id. A plaintiff's claim need only possess a "glimmer of hope" to defeat a fraudulent joinder challenge. Id. at 426. As always, the court must "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." Id. at 425 (internal quotation marks omitted).

In their Notice of Removal, the Gallagher defendants argue there is "no possibility" that plaintiffs can establish a cause of action against Riley for two reasons.

---

[2] "The term 'fraudulent joinder' is a bit misleading, inasmuch as the doctrine requires neither a showing of fraud . . . nor joinder." Mayes v. Rapoport, 198 F.3d 457, 466 n.8 (4th Cir. 1999). "In fact, it is irrelevant whether the defendants were 'joined' to the case or originally included as defendants; rather, the doctrine is potentially applicable to each defendant named by the plaintiff either in the original complaint or anytime prior to removal." Id.

First, the Gallagher defendants contend that Riley did not procure the 2012 Policy in effect at the time of the accident, and therefore, there is no casual chain linking Riley's acts or omissions to plaintiffs' injuries. Notice of Removal at 4–5; Defs.' Resp. 2–3. The Gallagher defendants next contend that, even if this causation problem could be ignored, any claims against Riley are time barred. Notice of Removal at 5; Defs.' Resp. 4–6. The court addresses each argument in turn.

### A.     Causation

The Gallagher defendants argue that Riley cannot be held liable for the deficiencies in the 2012 Policy because it did not procure that policy. Defs.' Resp. 2–3. The Gallagher defendants contend that a policy renewal constitutes a separate contract under South Carolina law, and therefore, Riley's failure to procure the proper coverage in the 2011 Policy had no effect on the coverage in the 2012 Policy. Id. This argument draws on principles of contract law in an effort to demonstrate that plaintiffs' statutory and tort claims fail for a lack of causation. Id. (arguing that the two policies must be considered "separate contracts requiring renegotiation and Riley would therefore still not be a party to the 2012 transaction"). However, plaintiffs' statutory and tort claims are each based on Riley's alleged misrepresentations regarding the coverage available under the 2011 Policy, not Riley's obligations under the 2012 Policy. Compl. ¶¶ 24, 26–30, 32–34, 38; see also Armstrong v. Collins, 621 S.E.2d 368, 376 (S.C. Ct. App. 2005) ("The recovery of damages may be predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation." (quoting Winburn v. Ins. Co. of N. Am., 339 S.E.2d 142, 146 (S.C. Ct. App. 1985)). Causation, therefore, should be governed by tort law, not contract law.

> Under ordinary tort principles,
>
> > Proof of proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. Legal cause is proved by establishing foreseeability. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence.

McNair v. Rainsford, 499 S.E.2d 488, 497 (S.C. Ct. App. 1998) (internal citations omitted). These principles of causation suggest that there is some possibility that plaintiffs may maintain a cause of action against Riley. If plaintiffs depended on Riley to procure the proper coverage, it stands to reason that they would also have been relying on Riley's assessment of that coverage in renewing the policy. It is almost axiomatic that a renewal policy contains substantially the same provisions as the original policy, and thus, Riley may well have foreseen the consequences of its alleged misrepresentations extending beyond the 2011 Policy period. Undoubtedly, there may be other facts which need to be considered in determining whether the result of Riley's failures was foreseeable, but this is why courts have long held that "the question of proximate cause is [ordinarily] one of fact for the jury." Id.

The Gallagher defendants certainly have not provided any legal authority requiring a different analysis. The Gallagher defendants' primary legal support for their argument comes from Allstate Ins. Co. v. Thatcher, wherein the Supreme Court of South Carolina held that an insurer seeking to include certain exclusions in a policy must comply with the statutorily required procedures governing such exclusions each time the policy is renewed. 325 S.E.2d 59, 60–61 (S.C. 1985). The Allstate decision only partially supports the principle the Gallagher defendants seek to establish—that a renewal is a distinct contract from the original policy. In addressing this point, the Allstate court

6

stated that "[i]n one sense of the word, the renewal of any contract creates a new contract," suggesting that, in another sense, the opposite is true. Id. at 61 (emphasis added). Moreover, even if a renewal were considered completely distinct from the original policy, this principle does not necessarily lead to the conclusion that the creation of the initial policy has no causal connection to the contents of the renewal policy. The Allstate decision simply says nothing about how this principle of contract law interacts with tort law's causation requirement. For the reasons outlined above, it seems entirely possible that one contract could have some causal effect on another.

Therefore, the court finds that the Gallagher defendants have failed to carry their heavy burden to prove there is no possibility that plaintiffs can establish causation.

**B.     Statute of Limitations**

The Gallagher defendants next argue that any claims plaintiffs might have against Riley are clearly barred by their respective statutes of limitations. Notice of Removal 5–6; Defs.' Resp. 4–6. The Gallagher defendants assert, and plaintiffs do not dispute, that each of plaintiffs' claims is subject to a three year statute of limitations running from the time when a party knows or should know, through exercise of due diligence, that a cause of action exists. Defs.' Resp. 5. Because the proposal for the 2012 Policy, which was produced on July 29, 2012, and the 2012 Policy itself, which went into effect on August 1, 2012, both explicitly excluded LHWCA coverage, the Gallagher defendants argue that plaintiffs should have known of their claims well before this action was filed on February 26, 2016. Id. Plaintiffs contend that they could not have learned about the deficiencies in their policy, because they reasonably relied on Riley and Gallagher's expertise to procure the appropriate coverage. Pl.'s Mot. 6–7.

7

Generally, "[t]he duty on the part of one who signs a written instrument to exercise reasonable care to protect himself requires that he read the contract which he signs." Maw v. McAlister, 166 S.E.2d 203, 205 (S.C. 1969). On the other hand, "[w]hile an insured cannot abandon all care, the rules which require one to inform himself of the terms of his contract and to take precautions for his own protection are less exacting when dealing with one's own insurance agent or broker in the procurement of an insurance contract." Riddle-Duckworth, Inc. v. Sullivan, 171 S.E.2d 486, 492 (S.C. 1969). "This also applies to renewal of a policy, where a layman would not have known about a coverage problem." Great Am. Ins. Co. v. Mills, No. 4:06-cv-01971, 2008 WL 2250256, at *10 (D.S.C. May 29, 2008).

The Gallagher defendants argue that even under the more relaxed standard announced in Riddle-Duckworth, plaintiffs failed to exercise reasonable care to protect themselves because they "abandon[ed] all care" by failing to read the 2012 Policy proposal or the policies themselves. Defs.' Resp. 5. The Gallagher defendants seem to assume that plaintiffs did not read these documents based on their assessment that anyone who had done so would have realized that the policies did not provide the requested coverage. The Gallagher defendants have not explained why a review of the policy proposal or the 2012 Policy would have necessarily alerted plaintiffs to the lack of LHWCA coverage, but a review of each document indicates that LHWCA coverage is not available. See 2012 Policy at 7[3] (containing exclusion for "[b]odily [i]njury to any person in work subject to the Longshore and Harbor Workers' Compensation Act"); ECF No. 9-2, Policy Proposal at 7 (indicating limit of "USL&H" coverage "N/A").

---

[3] The court cites the exhibit page number, rather than the page numbers listed on the 2012 Policy itself.

This evidence may well demonstrate that plaintiffs knew or should have known that the 2012 Policy did not contain LHWCA coverage. However, plaintiffs do not allege that they asked Riley for LHWCA coverage, specifically, but only that they asked for the same coverage that had been provided under the Anderson Policy. Compl. ¶ 21. Thus, even under the Gallagher defendants' proposed analysis, the real question is not whether plaintiffs would have realized that the 2011 and 2012 Policies did not include LHWCA coverage, but rather, whether plaintiffs would have realized that such policies did not include the same coverage as the Anderson Policy. The Anderson Policy has not been produced to this point, but if it were available, the court's inquiry would need to account for the fact that plaintiffs are not insurance experts, and thus, they may not have been able to accurately compare the two policies. See Riddle-Duckworth, 171 S.E.2d at 492 ("Plaintiff, while experienced in his own business, was not experienced in the insurance field and had a right to rely upon the expert knowledge of the agent. The reasonableness of the conduct of the parties must be assessed in that light.").

Moreover, there is at least one South Carolina decision, Kelly v. S.C. Farm Bureau Mut. Ins. Co., holding that an insured plaintiff reasonably relied on her agent to procure the appropriate coverage despite the fact that she never read the policy. 450 S.E.2d 59, 63 (S.C. Ct. App. 1994). The facts in Kelly are quite similar to the facts alleged here. In Kelly, the plaintiff specifically explained to her agent that she needed the same coverage provided in her previous policy with another insurer—which, crucially, covered certain storage buildings on her property. Id. at 61. After Hurricane Hugo damaged these storage buildings, the plaintiff made a claim under her new policy only to discover that the buildings were not covered. The court specifically found that

9

> [plaintiff] did not read the [new] policy and was not aware of this exclusion. She could have read the policy and would have easily understood the exclusion had she done so. She would have also understood that the storage buildings were not covered.

Id. Nevertheless, the court noted that the plaintiff made "specific inquiries" into the terms and provisions of her policy[4] and "reasonably relied upon her agent whom she trusted to provide her with the same coverage she enjoyed under the [previous] policy." Id. at 63. Much like the plaintiff in Kelly, plaintiffs allege they gave Riley specific instructions to obtain the same coverage that was provided in the Anderson policy.[5]

Therefore, the court finds that it is at least possible that plaintiffs were entitled to rely on Riley's alleged representations, and thus, were not unreasonable in failing to discover the policies' deficiencies until they were denied coverage in March 2013. The court need not decide whether plaintiffs' claims are likely to succeed, or even if such claims would survive a Rule 12(b)(6) motion to dismiss. Hartley, 187 F.3d at 424. Plaintiffs' likelihood of success may be very slight, indeed, but even a "slight possibility" is sufficient to divest this court of jurisdiction. Id. at 426. "Once the court identifies [a] glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Id. The court finds that such a "glimmer of hope" exists in this case.

---

[4] The only "specific" communications mentioned in the opinion are the plaintiff's statements to her agent that "she desired the same coverage she had under the [previous] policy." Kelly, 450 S.E.2d at 60.

[5] The court notes that it may be possible to distinguish the Kelly case due to the fact that, in Kelly, the plaintiff also received a declarations page indicating that some portion of her premium covered "appurtenant structures." See Kelly, 450 S.E.2d at 63 ("Farm Bureau accepted a premium to provide coverage for 'appurtenant structures' and its declarations page on the policy reflected such coverage. . . . Farm Bureau's acceptance of the premium for this coverage estops it from claiming, after a loss, that no coverage exists."). However, the Kelly court mentioned this fact in a section separate from the rationale outlined above, suggesting that it was an independent basis for the court's holding. Ultimately, the "no possibility" standard is exceedingly difficult to establish and the court is convinced that the Kelly decision is sufficiently analogous to find that it is at least possible that Kelly would apply here.

## III.  CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiffs' motion and remands this case to state court.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 19, 2016**
**Charleston, South Carolina**

11